[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-13800

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 9, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-02531-CV-CAP-1

TIFFANY WILLIAMS,

                                                  Plaintiff-Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF
GEORGIA, THE UNIVERSITY OF GEORGIA,
MICHAEL F. ADAMS, and in his official capacities as
President of the University of Georgia and President
of the University of Georgia Athletic Association, Inc.,
VINCENT J. DOOLEY, Individually, and in his
official capacity as Athletic Director of the University of Georgia
Athletic Association, Inc.,
UNIVERSITY OF GEORGIA ATHLETIC ASSOCIATION INC.,
et al.,

                                                  Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 9, 2006)**

Before TJOFLAT and KRAVITCH, Circuit Judges and JORDAN[*], District Judge.

KRAVITCH, Circuit Judge:

The primary question in this appeal is whether plaintiff, a student at the University of Georgia, alleged facts sufficient to withstand defendants' motion to dismiss her Title IX claim based on student-on-student sexual harassment.

## Background

Here, as alleged in her complaint,[1] at approximately 9:00 p.m. on January 14, 2002, Tiffany Williams ("Williams"), then a student at the University of Georgia ("UGA"), received a phone call from UGA basketball player Tony Cole. Cole invited Williams to his room in McWhorter Hall, the main dormitory for student-athletes on the university campus. Shortly after Williams arrived at Cole's room, the two engaged in consensual sex. Unbeknownst to Williams, Brandon Williams, a UGA football player, whom Williams did not know, was hiding in Cole's closet. Cole and Brandon had previously agreed that Brandon would hide in the closet while Cole had sex with Williams. When Cole went to the bathroom and slammed the door behind him, Brandon emerged from the closet naked,

---

[*] Honorable Adalberto J. Jordan, United States District Judge for the Southern District of Florida, sitting by designation.

[1] Because the district court disposed of Williams's claims on a motion to dismiss, the facts we state are Williams's allegations, which we must accept as true. *Covad Commc'n Co. v. BellSouth Corp.*, 299 F.3d 1272, 1276 n.2 (11th Cir. 2002).

sexually assaulted Williams, and attempted to rape her.

As Brandon was sexually assaulting Williams, Cole was on the telephone with Steven Thomas, Cole's teammate, and Charles Grant, Brandon Williams's teammate. Cole told Thomas and Grant that they were "running a train" on Williams.[2] Thomas came to Cole's room, and Cole allowed Thomas to enter the room. With Cole's encouragement, Thomas sexually assaulted and raped Williams.

Williams returned to her dormitory at approximately 11:00 p.m., called Jennifer Shaughnessy, and asked Shaughnessy to come to her room. When Shaughnessy arrived, Williams was visibly upset and crying. Williams explained what had happened in Cole's room, and Shaughnessy told Williams that she had been raped and should call the police. Williams told Shaughnessy that she did not want to call the police because she was afraid. While Shaughnessy was with Williams, the telephone rang. The caller identified himself as Steven Thomas, and Williams immediately hung up. Thomas had never called Williams before that night. Minutes later, Thomas called again. Williams said that she was afraid to answer the phone, therefore, Shaughnessy answered. Thomas immediately asked, "Why did you hang up on me?" When Shaughnessy said "Hello," Thomas asked,

---

[2] "Running a train" is a slang expression for a gang rape.

3

"Is Tiffany there?" Shaughnessy told Thomas that he had the wrong number, and she hung up.

Williams then called her mother, who notified UGA Police of the incident that occurred in Cole's room. UGA Police arrived at Williams's room shortly after 1:00 a.m. on January 15 and arranged for Williams to have a sexual assault exam performed. Later that same day, Williams requested that UGA Police process the charges against Cole, Brandon Williams, and Thomas. After filing her complaint with UGA Police, Williams permanently withdrew from UGA.

UGA Police conducted an investigation, as part of which, the police obtained Cole's telephone records. The records show that Cole called Williams's dorm room several times in the days immediately following the incident and Williams's withdrawal. Within forty-eight hours of the incident, UGA's Chief of Police notified UGA's Director of Judicial Programs of the incident and provided her with a written explanation. On April 17, 2002, a lieutenant from UGA Police provided the Director of Judicial Programs with additional information about the investigation. Several of the individuals who spoke with UGA Police supported Williams's allegations.

The actions of Cole, Brandon Williams, and Thomas constitute sexual harassment under the Sexual Harassment Policy of the University of Georgia. The

4

policy applicable in January 2002, however, provided that "[s]exual harassment between students, neither of whom is employed by the University should be treated as a disciplinary matter and should be reported to the Office of Student Affairs" and not dealt with under the Sexual Harassment Policy. Cole, Brandon Williams, and Thomas were charged with disorderly conduct under UGA's Code of Conduct. Additionally, their coaches suspended them from their sports teams. A UGA judiciary panel, consisting of one staff member and two university students, held hearings almost a year after the January 2002 incident and decided not to sanction Cole, Brandon Williams, or Thomas. By the time of the hearing, Cole and Brandon Williams no longer attended UGA. Thomas left UGA in September 2003. The three also faced criminal charges, but a jury acquitted Brandon Williams, and the prosecutor dismissed the charges against Cole and Thomas.

Williams's complaint also alleges that defendants James Harrick, former head coach of UGA's men's basketball team, Vincent Dooley, Athletic Director of the University of Georgia Athletic Association ("UGAA"), and Michael Adams, President of UGA and UGAA, were personally involved in recruiting and admitting Cole even though they knew he had disciplinary and criminal problems, particularly those involving harassment of women, while attending other colleges. While attending Wabash Valley College in Mount Carmel, Illinois, Cole was

5

dismissed from the basketball team because of disciplinary problems. Furthermore, Cole was dismissed from the Community College of Rhode Island after allegations that in December 1999 and February 2000 he sexually assaulted two part-time employees of the college's athletic department by groping the women, putting his hands down their pants, and threatening them when they rejected his advances. Cole pleaded no contest to criminal charges of misdemeanor trespass in connection with the two sexual assaults.

Williams brought suit against: (1) UGA, the Board of Regents of the University System of Georgia ("Board of Regents"), and UGAA for violation of Title IX; (2) Adams, Harrick, and Dooley as individuals and in their official capacities as UGA and UGAA President, former head basketball coach, and Athletic Director of UGAA for violation of 42 U.S.C. § 1983; (3) UGA and the Board of Regents for violation of 42 U.S.C. § 1983; and (4) Cole, Brandon Williams, and Thomas for state law torts. She also sought "injunctive relief ordering the defendants to implement policies, and procedures to protect students like Plaintiff from student-on-student sexual harassment prohibited by Title IX."

UGA, UGAA, the Board of Regents, Adams, Harrick, and Dooley all filed motions to dismiss Williams's claims. Williams then moved to amend her complaint, adding additional factual allegations to support her claims, providing a

6

more specific request for injunctive relief, and requesting declaratory relief against UGA, UGAA, and the Board of Regents. For various reasons we discuss later, the district court dismissed Williams's Title IX and § 1983 claims, denied her requests for declaratory and injunctive relief, and denied in part and granted in part Williams's motion to amend her complaint. The district court also declined to exercise supplemental jurisdiction over Williams's state law claims. In sum, the district court dismissed all the claims.

Williams now appeals. After a thorough review of the record and the benefit of oral argument, we reverse the district court's decisions to dismiss Williams's Title IX claims against UGA and UGAA and to deny Williams's motion to amend her complaint. In all other respects, we affirm the district court.

### Standard of Review

We review *de novo* the district court's order granting the defendants' motion to dismiss, *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 722 (11th Cir. 2002), taking the facts alleged in the complaint as true and construing them in the light most favorable to the plaintiff. *Covad Commc'n Co.*, 299 F.3d at 1276 n.2. "A motion to dismiss is only granted when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbu    ster Entm't Corp.*, 139 F.3d

7

1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

We generally review the denial of a motion to amend a complaint for an abuse of discretion, *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003), but we review questions of law *de novo*. *United States v. Alaboud*, 347 F.3d 1293, 1296 (11th Cir. 2003).

## Discussion

Williams raises four issues on appeal – whether the district court erred in: (1) denying Williams's motion to amend her complaint; (2) dismissing her Title IX claims; (3) dismissing her § 1983 claims; and (4) dismissing her claim for injunctive relief.

I. *Whether the District Court Erred in Denying Williams's Motion to Amend Her Complaint*

Williams argues that the district court erred in denying her motion to amend her complaint to file claims for a declaratory judgment against UGA, the Board of Regents, and UGAA. In her first amended complaint, Williams sought declaratory judgments "that defendants [sic] application of its sexual harassment policy to Tiffany Williams was unconstitutional as it denied her equal protection of the laws" and "that defendants [sic] application of its sexual harassment policy to other

8

similarly situated female students who are sexually harassed by other students denies equal protection of the laws." Williams's first amended complaint also contained additional factual allegations. At the time Williams filed her first amended complaint, the Board of Regents, UGA, Adams, and Dooley had filed a motion to dismiss; only Thomas had filed an answer.

Federal Rule of Civil Procedure 15(a) states that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). For purposes of this Rule, a motion to dismiss is not a responsive pleading. *Chilivis v. SEC*, 673 F.2d 1205, 1209 (11th Cir. 1982). If the case has more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer. *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000).

Here, the clerk of the district court refused to file Williams's first amended complaint until Williams obtained the consent of the opposing parties or leave of court. Williams then filed a motion seeking permission from the court to file her first amended complaint. Apparently believing that Williams could not amend her complaint as a matter of course, the district court analyzed her first amended complaint under another provision of Rule 15(a). The district court permitted

Williams to amend her complaint to include additional factual allegations but rejected as futile her claims for declaratory judgments.

The district court erred in failing to allow Williams to file her first amended complaint as a matter of course. When Williams attempted to file her first amended complaint, Thomas was the only defendant who had filed a responsive pleading. Williams's first amended complaint included additional claims against UGA, the Board of Regents, and UGAA, none of whom had filed a responsive pleading. Therefore, Williams had the right to amend her complaint as a matter of course.[3]

UGAA argues that we should affirm the district court's holding as it applies to UGAA because the sexual harassment policy was not its policy and it lacks the authority to change the policy should the plaintiff prevail. We also reject this argument because it mimics the argument we just rejected. UGAA's argument is

---

[3] Rule 15(a) also provides that, except in the two circumstances in which the plaintiff may amend as a matter of course, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). This court has held that, consistent with Rule 15(a)'s mandate that "leave shall be freely given when justice so requires," district courts should generously allow amendments even when the plaintiff does not have the right to amend the complaint. *Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir. 1992) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But we have also held that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing *Foman*, 371 U.S. at 182). When the plaintiff has the right to file an amended complaint *as a matter of course*, however, the plain language of Rule 15(a) shows that the court lacks the discretion to reject the amended complaint based on its alleged futility.

10

simply that Williams's amended complaint is futile, but as we stated, the district court lacked the discretion to make that determination at that time.

II. *Whether the District Court Erred in Dismissing Williams's Title IX Claims*

Williams argues that the district court erred in dismissing her Title IX claims against UGA, the Board of Regents, and UGAA. The district court concluded that Williams's claims failed because she was unable to meet the deliberate indifference requirement of the Title IX cause of action.

Title IX states, in pertinent part: "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although Title IX does not expressly permit private enforcement suits, the Supreme Court has found an implied private right of action for individuals to enforce the mandates of Title IX. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979). The Court also has held that private individuals can obtain monetary damages. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 76 (1992).

"'[S]exual harassment' is 'discrimination' in the school context under Title IX" and in certain narrow circumstances, a plaintiff may be able to recover for student-on-student harassment. *Davis v. Monroe County Bd. of Educ.*, 526 U.S.

11

629, 650 (1999). A plaintiff seeking recovery for a violation of Title IX based on student-on-student harassment must prove four elements. First, defendant must be a Title IX funding recipient. *Floyd v. Waiters*, 133 F.3d 786, 789 (11th Cir.), *vacated on other grounds*, 525 U.S. 802 (1998), *reinstated*, 171 F.3d 1264 (11th Cir. 1999). Second, an "appropriate person" must have actual knowledge of the discrimination or harassment the plaintiff alleges occurred. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). "[A]n 'appropriate person' . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id.* Third, a funding recipient is liable for student-on-student harassment only if "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis*, 526 U.S. at 633. In considering this element, we analyze the conduct of the funding recipient, not the alleged harasser; we do this to ensure that we hold the funding recipient liable only if the funding recipient's deliberate indifference "subjected" the plaintiff to discrimination. *Id.* at 640-41. Therefore, we will not hold a funding recipient liable solely because a person affiliated with the funding recipient discriminated against or harassed the plaintiff. *Hawkins v. Sarasota County Sch. Bd.*, 322 F.3d 1279, 1284 (11th Cir. 2003). Fourth, the discrimination must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to

12

an educational opportunity or benefit." *Davis*, 526 U.S. at 633.

A. *Title IX Claims Against the Board of Regents*

As an initial matter, we hold that the district court properly dismissed Williams's Title IX claim against the Board of Regents. Even when we construe Williams's initial complaint and first amended complaint broadly and construe all the allegations in her favor, we cannot find any allegations that an "appropriate person" with the Board of Regents had "actual knowledge of discrimination in the recipient's programs and fail[ed] adequately to respond." *Gebser*, 524 U.S. at 290. Williams alleged that the Board of Regents appointed Adams and ceded substantial control over UGA to him. Adams, however, is not a member of the Board of Regents, and Williams has failed to allege that Adams has authority to take action to change the policies of the Board of Regents. In the absence of any allegations that an appropriate person with the Board of Regents had actual knowledge of the acts that Williams alleges constitute discrimination, Williams's Title IX claim against the Board of Regents cannot survive a 12(b)(6) motion to dismiss. *United States v. $121,100 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993) (holding that an appeals court can affirm for any reason supported by the record, even if not relied upon by the district court).

B. *Title IX Claims Against UGA and UGAA*

13

Turning to the Title IX claims against UGA and UGAA, for the reasons that follow, we hold that the district court erred in dismissing those claims.

As to the first element, the parties agree that UGA is a funding recipient properly subject to Title IX liability. Although UGAA disputes that it is a funding recipient, we believe that Williams has presented sufficient facts at this stage to show that we should treat UGAA as a funding recipient. Here, Williams has alleged that UGA, a funding recipient, has ceded control over one of its programs, the athletic department, to UGAA and provided extensive funding to UGAA. Notably, the Court has not resolved whether this is sufficient to make an entity a funding recipient subject to Title IX liability. *NCAA v. Smith*, 525 U.S. 459, 470-71 (1999); *see also Alston v. Va. High Sch. League, Inc.*, 144 F. Supp. 2d 526, 531 (W.D. Va. 1999). We are persuaded, however, by the analysis of the Western District of Michigan, noting that if we allowed funding recipients to cede control over their programs to indirect funding recipients but did not hold indirect funding recipients liable for Title IX violations, we would allow funding recipients to receive federal funds but avoid Title IX liability. *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 80 F. Supp. 2d 729, 733-34 (W.D. Mich. 2000). We hold that Williams's complaint sufficiently alleges this element, and we leave for the discovery process and the district court to determine whether to treat UGAA like a

14

funding recipient.

As to the second element, we agree with Williams that an "appropriate person" at both UGA and UGAA had actual knowledge of the harassment. According to Williams, Adams, the President of UGA and UGAA, and Dooley, the Athletic Director of UGAA, had actual knowledge of the three forms of discrimination or harassment that Williams allegedly faced: (1) Cole's recruitment and admission despite his past misconduct at several other schools; (2) the January 14, 2002 incident involving Cole, Brandon Williams, and Thomas; and (3) UGA's lax treatment of student-on-student harassment and UGAA's failure to discuss sexual harassment policies and procedures with student-athletes. Additionally, Williams has sufficiently alleged – and Adams and Dooley do not dispute – that Adams and Dooley had authority to take corrective measures for UGA and UGAA to end the alleged discrimination. Thus, we must turn to the final two elements of a Title IX cause of action.

1. *Were UGA and UGAA Deliberately Indifferent to the Alleged Discrimination*?

The *Davis* Court held that funding recipients are deliberately indifferent "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis,* 526 U.S. at 648. As the

15

defendants note, the Court also stated that district courts can identify a funding recipient's "response as not 'clearly unreasonable' as a matter of law" and dispose of the claim on a motion to dismiss. *Id.* at 649. Nevertheless, we believe that Williams has alleged sufficient facts in her complaint to demonstrate that UGA and UGAA were deliberately indifferent to the alleged discrimination and that the district court erred in concluding that the response was "not 'clearly unreasonable' as a matter of law."

First, Williams has alleged that Adams and Dooley, "appropriate person[s]" within UGA and UGAA, knew about Cole's previous misconduct when they recruited him to attend and admitted him to UGA. Adams and Dooley ignored Cole's past and thereby disregarded the safety of female members of UGA's community. Although Williams admitted that she had engaged in consensual sex with Cole, Williams alleged that Cole was the ringleader of a conspiracy that led to her being sexually assaulted by Brandon Williams and raped by Thomas. Therefore, Adams and Dooley's decision to recruit and admit Cole played a significant role in Williams's sexual assault and rape and contributed to her facing sexual harassment.

Second, viewing the evidence in the light most favorable to Williams,

UGA's response to Williams's allegations was insufficient.[4] Although UGA Police seem to have performed a thorough investigation, UGA failed to provide an adequate response. Within forty-eight hours of the incident, UGA had a preliminary report providing details about the incident, and by April 2002, had a full report, including information about interviews with suspects and witnesses, from UGA Police. Nevertheless, UGA waited another eight months before conducting a disciplinary hearing to determine whether to sanction the alleged assailants. By that point, two of the alleged assailants no longer attended UGA. The fact that the disciplinary panel ultimately decided not to sanction the alleged assailants is immaterial because it fails to explain why UGA waited almost eleven months to take corrective action, especially considering the fact that UGA Police's report provided substantial evidence corroborating Williams's version of the January 14 incident. To the extent that UGA argues that it waited so long because of the pending criminal trials against the assailants, this argument also fails because: (1) the pending criminal charges did not affect UGA's ability to institute its own procedures; (2) the criminal charges were an ineffectual means to prevent future attacks at UGA while the charges were pending; and (3) the disciplinary

[4] Although the complaint appears not to adequately allege that UGAA had any role in the discrimination Williams suffered because of the lax response to the January 14 incident, we leave for the district court to determine what role UGAA played in this form of discrimination and what role UGAA could have played in responding to the incident more effectively.

proceedings were not instituted for another four months after Brandon Williams's acquittal and the dismissal of charges against Cole and Thomas.

Third, even though the *Gebser* Court held that "the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX," *Gebser*, 524 U.S. at 292, we believe that the defendants' failure adequately to deal with student-on-student harassment proactively, including the defendants' failure to institute a policy similar to the one in the Department of Education Regulations and Williams's demand for declaratory relief and the failure to inform student-athletes about the defendants' policies, is relevant when determining whether the defendants acted with deliberate indifference.

Even though "[a] university might not . . . be expected to exercise the same degree of control over its students that a grade school would enjoy," *Davis*, 526 U.S. at 649, UGA and UGAA exercised almost no control over Cole, even though they knew about his past misconduct. Moreover, UGA and UGAA failed to enforce their existing harassment policies. Placed together, Williams's allegations that: (1) the defendants admitted Cole despite their knowledge of his past misconduct; (2) UGA responded sluggishly to Williams's allegations; and (3) the defendants failed to implement effective procedures for dealing with student-on-student harassment and informing student-athletes about the defendants' policies

18

are sufficient to meet Williams's burden on a motion to dismiss to show that she faced discrimination or harassment and that the defendants reacted with deliberate indifference.

2. *Was the Discrimination Severe, Pervasive, and Objectively Offensive*?

As for the first part of the final element, we conclude that the discrimination was "severe, pervasive, and objectively offensive." *Id.* at 633. "Whether gender-oriented conduct rises to the level of actionable 'harassment' thus 'depends on a constellation of surrounding circumstances, expectation, and relationships,' including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Id.* at 651 (citations omitted).

First, we note that this is not a single instance of one-on-one peer harassment that the *Davis* Court and this court have cautioned likely is not actionable under Title IX. *Id.* at 652-53; *Hawkins*, 322 F.3d at 1289 ("[T]o have a 'systemic effect' of denying the victim equal access to an educational program or activity . . . gender discrimination must be more widespread than a single instance of one-on-one peer harassment . . . .").

Here, Williams has alleged that three individuals conspired together to commit two separate acts of sexual misconduct, that Adams, Harrick, and Dooley

19

recruited and admitted Cole despite his previous misconduct, and that UGA and UGAA failed to deal properly with student-on-student harassment and harassment by student-athletes. Without recounting the facts in detail, we believe that Williams's allegations are sufficient at this stage to show that the discrimination and harassment that Williams faced was "severe, pervasive, and objectively offensive." *Davis,* 526 U.S. at 633.

        3.  *Did the Alleged Discrimination Effectively Bar Williams's Access to an Educational Opportunity or Benefit*?

This leaves us to resolve whether the discrimination "effectively bar[red] the victim's access to an educational opportunity or benefit." *Id.* Plaintiff's allegations on this point are scant, especially because she withdrew from UGA almost immediately after the January 14 incident. But having concluded that the recruitment and admission of Cole, the January 14 conspiracy to rape and sexually assault Williams, and the defendants' failure to implement more effective policies to deal with student-on-student harassment and harassment by student-athletes contributed to Williams facing discrimination, we also conclude that these allegations are sufficient on a motion to dismiss to show that the defendants' discrimination effectively barred Williams's access to an educational opportunity or benefit. Williams has alleged that she may attend UGA for undergraduate or

20

graduate studies if the school implements a more effective policy to deal with student-on-student harassment. This shows that the defendants' failure to implement more effective policies to deal with student-on-student harassment may bar her access to future educational opportunities at UGA. Additionally, Williams has alleged that Cole's admission and her rape and sexual assault by two men who conspired with Cole played a significant role in her withdrawal from UGA. These forms of discrimination also may have barred her access to educational opportunities at UGA because the events were so traumatic that she withdrew from UGA.

III. *Whether the District Court Erred in Dismissing Williams's § 1983 Claims*

Next we consider Williams's § 1983 claims against Adams, Harrick, and Dooley, as individuals and in their official capacities, and against the Board of Regents and UGA. The district court dismissed the claims against Adams, Harrick, and Dooley as individuals based on Williams's failure to state a claim and the defendants' qualified immunity. The district court dismissed all other claims based on Eleventh Amendment immunity.

Title 42 U.S.C. § 1983 provides every person with the right to sue those acting under color of state law for violations of federal constitutional and statutory provisions. 42 U.S.C. § 1983. Section 1983 is merely a vehicle by which to bring

21

these suits; it does not create any substantive federal rights. *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996). Therefore, the plaintiff must point to a specific federal right that the defendant violated. *Id.*

Here, Williams asserts that Adams, Harrick, and Dooley, while acting under color of state law – a finding that the defendants do not dispute – deprived her of her federal rights: (1) under Title IX by failing to implement policies and procedures to ensure compliance with the statute and (2) under the Equal Protection Clause for discrimination based on sex. Williams also asserts a § 1983 claim against the three defendants because they exhibited deliberate indifference by recruiting and admitting Cole despite his troubled past. Williams fails to explain what statutory or constitutional right the defendants violated through their deliberate indifference, so we consider those allegations as relevant to both the Title IX and equal protection claims. Additionally, Williams asserts that UGA and the Board of Regents violated the Equal Protection Clause by implementing a sexual harassment policy that treats student-on-student harassment differently from harassment involving other members of the university community.

A. *Section 1983 Claims Against Adams, Harrick, and Dooley for Violating Title IX*

The district court dismissed Williams's first § 1983 claim against Adams,

22

Harrick, and Dooley as individuals because a plaintiff cannot assert a § 1983 action based on a violation of Title IX. We agree. Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations. *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999).[5] Although this court has never considered whether a plaintiff can use § 1983 to assert a Title IX claim against an individual school official, we conclude that to allow plaintiffs to use § 1983 in this manner would permit an end run around Title IX's explicit language limiting liability to funding recipients.

B. *Section 1983 Claims Against Adams, Harrick, and Dooley for Violating the Equal Protection Clause*

The district court dismissed Williams's second § 1983 claim against Adams, Harrick, and Dooley as individuals, holding that the defendants have qualified immunity and that Williams failed to state a claim. We need not address whether Williams failed to state a claim because we affirm the district court's holding on qualified immunity grounds.

"Qualified immunity shields governmental officials executing discretionary responsibilities from civil damages 'insofar as their conduct does not violate

---

[5] Williams cites *Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1999), to support her claim, but as the district court noted, *Seamons* actually stands for the contrary proposition. *Id.* at 1234 n.8.

23

clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right. *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (per curiam).

To establish a defense of qualified immunity, the defendant must show that he acted within the scope of discretionary authority when performing the challenged conduct. *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). If the defendant meets this burden, the burden shifts to the plaintiff to establish that the defendant's conduct violated clearly established law. *Id.* at 1564. The parties agree that the defendants met their burden; therefore, we turn to the dispositive inquiry.

Under the second step, the plaintiff must establish that the state of the law when the challenged events occurred was such that the defendant had fair warning that his alleged treatment of the plaintiff was unconstitutional. *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003). The plaintiff does not have to show that the precise conduct in question has been held unlawful. *Id.*

Nevertheless, for a federal right to be clearly established, its parameters "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Equal Protection Clause confers a federal constitutional right to be free from sex discrimination. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979). Here, Williams has alleged a harrowing incident, similar to other allegations that unfortunately have become increasingly common on today's university campuses.[6] Williams presents a compelling case that Adams, Harrick, and Dooley knew about the criminal and disciplinary problems that plagued Cole's past, but that they considered his basketball skills a greater benefit than his questionable mores were a burden. Furthermore, Williams has presented evidence to show that the defendants' action, coupled with others' actions, may amount to discrimination actionable under Title IX. At a minimum, Adams, Harrick, and Dooley acted recklessly, and their apparent "win at all costs" attitude resulted in enormous costs and fewer wins than expected. Nevertheless, Williams has failed to present any cases that show the three defendants violated her clearly established equal protection rights by recruiting and admitting an individual like Cole.

---

[6] *See, e.g.*, Diane Carman, *Finally, A Debacle CU's Barnett Can't Survive*, Denver Post, Dec. 8, 2005, at B05; *Six UTC Players Charged with Rape*, Mobile Register, Nov. 9, 2005, at C7; Simone Weichselbaum, *Athletes: Campus Life Raunchy, Raucous Partygoers, Others at La Salle Talk of Alleged Sexual Assaults*, Phila. Daily News, July 1, 2004, at 10.

25

Therefore, Williams cannot meet her burden under the second step of the qualified immunity analysis, and we hold that Adams, Harrick, and Dooley are entitled to qualified immunity.

Williams also brings § 1983 claims against Adams, Harrick, and Dooley, in their official capacities. The district court dismissed these claims based on Eleventh Amendment immunity. Without addressing the district court's reasoning, we hold instead that the claims were properly dismissed for the same reasons we dismissed the claims against those defendants in their individual capacities. *$121,100 in U.S. Currency*, 999 F.2d at 1507 (holding that an appeals court can affirm for any reason supported by the record, even if not relied upon by the district court).

C. *Section 1983 Claims Against UGA and the Board of Regents*

As for the § 1983 claims against UGA and the Board of Regents, we hold that the Eleventh Amendment bars suit against those defendants. Under most circumstances, the Eleventh Amendment bars suits against states and state entities by their citizens. *Hans v. Louisiana*, 134 U.S. 1, 20-21 (1890). Williams does not dispute that UGA and the Board of Regents are state entities for Eleventh Amendment purposes. But even in those situations in which the Eleventh Amendment bars suits, a party may sue the state if the state has waived its

immunity or if Congress has validly abrogated the state's immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (abrogation); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-40 (1985) (waiver).

Williams correctly notes that Congress validly abrogated the states' immunity from Title IX suits. *Gebser*, 524 U.S. at 284. This is why the Eleventh Amendment did not bar the direct Title IX action against UGA, UGAA, and the Board of Regents. Here, however, Williams is trying to use § 1983 to bring a Title IX claim. Congress has not abrogated states' immunity from § 1983 suits. *Miller v. King*, 384 F.3d 1248, 1259-60 (11th Cir. 2004). Nor has UGA or the Board of Regents waived its Eleventh Amendment immunity. Therefore, the Eleventh Amendment bars Williams's § 1983 claims against UGA and the Board of Regents.[7]

IV. *Whether the District Court Erred in Dismissing Williams's Claim for Injunctive Relief*

Finally, Williams asserts that the district court erred in dismissing her claim

---

[7] Although Williams's complaint does not set forth a § 1983 claim against UGAA, Williams asserts that we "must read the allegations of the complaint to include any theory on which the plaintiff may recover." *Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir. 1992) (citation omitted). Even if we were to accede to Williams's request, we would hold that the Eleventh Amendment bars a § 1983 claim against UGAA.

for injunctive relief that she requested in her initial complaint and expanded upon in her first amended complaint. In her initial complaint, Williams sought an injunction "ordering the defendants to implement policies, and procedures to protect students like Plaintiff from student-on-student sexual harassment prohibited by Title IX." Although not entirely clear, this request for injunctive relief likely applies to UGA, the Board of Regents, Adams, Dooley, and UGAA. In her first amended complaint, Williams sought an injunction ordering UGA and the Board of Regents to implement sexual harassment policies providing for:

(1) notice to students, parents of elementary and secondary students, and employees of the procedure, including where the complaints may be filed; (2) application of the procedure to complaints alleging harassment carried out by employees, other students, or third parties; (3) adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence; (4) designated and reasonably prompt timeframes for the major stages of the complaint process; (5) notice to the parties of the outcome of the complaint; and (6) an assurance that the

school will take steps to prevent recurrence of any

harassment and to correct its discriminatory effects on

the complainant and others, if appropriate – – as required

by and in accordance with 62 Fed. Reg. 12044.

The district court rejected Williams's claims because she lacked standing.

As an irreducible minimum, Article III requires a plaintiff to meet three standing requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003). First, the plaintiff must show that she has suffered an injury-in-fact. *Lujan*, 504 U.S. at 560. The plaintiff must show that the alleged injury arises from the invasion of a legally protected interest that is sufficiently concrete and particularized, and not abstract and indefinite. *Id.* Second, the plaintiff must establish a causal connection between the asserted injury-in-fact and the challenged action of the defendant. *Id.* Third, the plaintiff must show that it is likely, rather than speculative, that a favorable decision will redress her injury. *Id.* at 561. Additionally, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury." *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted).

29

We agree with the district court's reasoning and hold that Williams lacked standing to pursue injunctive relief because the threat of future harm to Williams and other students is merely conjectural.[8]  First, the alleged assailants no longer attend UGA.  Therefore, as for harm that may come from them, granting injunctive relief would not prevent future harm to Williams or other students or remedy the past harm Williams suffered.

Second, Williams no longer attends UGA.  Williams alleges that if UGA adopts an equal and more protective sexual harassment policy – presumably the one she asks this court to order – she may pursue undergraduate or graduate studies at UGA.  Furthermore, she alleges that in the absence of such a policy, the current students at UGA who are the victims of student-on-student harassment suffer from prohibited inequality.  Even though we concluded that UGA's and UGAA's sexual harassment policies may have contributed to Williams being subject to discrimination, Williams's claim that an equal and more protective sexual harassment policy would prevent future harm is too conjectural to warrant injunctive relief.  Consequently, we affirm the district court's decision that

_____

[8] To the extent that Williams's claim for injunctive relief is part of her first amended complaint, we hold that the district court properly dismissed the claim even though Williams could amend her complaint as a matter of course.  The district court's decision was on a threshold matter solely for a court to decide as a matter of law; therefore, it was different from the district court's decision to deny the motion to amend because the claims for declaratory relief were futile.

30

Williams lacks standing to obtain the injunctive relief she seeks.

V. *State Law Claims Against Cole, Brandon Williams, and Thomas*

The district court also dismissed Williams's state law claims against Cole, Brandon Williams, and Thomas, holding that because it dismissed the federal claims against the other defendants, it would exercise its discretion pursuant to 28 U.S.C. § 1367 not to assume supplemental jurisdiction over the state law claims. In her notice of appeal, Williams stated that she was appealing "the order granting the defendants' motion to dismiss and the final judgment." Additionally, she included Cole, Brandon Williams, and Thomas on the certificate of interested persons in her appellate brief, and she included Thomas's attorney on the certificates of service attached to the notice of appeal and the appellate briefs. These facts show that Williams probably intended to appeal the district court's ruling on the state law claims. Williams, however, failed to raise any arguments in her initial or reply brief addressing the district court's ruling on this issue. Therefore, even though we remand some federal claims, we will not remand to the district court to consider whether it should exercise supplemental jurisdiction over the state law claims because we conclude that Williams waived that argument by failing to raise it properly on appeal. *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

**Conclusion**

In conclusion, we remand to the district court for further proceedings on Williams's Title IX claims against UGA and UGAA and to allow Williams to file her first amended complaint in its entirety. We affirm the district court on all other rulings.